## THE STATE *vs.* ANN MARIA RATHBUN.

Third Judicial District, New Haven, January Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Cross-examining counsel have no right to examine a book or document in the hands of a witness which he consulted at the close of his cross-examination, though it contained memoranda made by him in preparation for his examination, if he did not use it to refresh his memory during his examination.

In charging the jury the court should, so far as possible, preserve the proper perspective, and not unduly magnify certain considerations and ignore or minimize others. Requests to charge which violate this rule, and in which particular aspects of the case are argumentatively stated and their importance unduly magnified, are properly refused, although the propositions of law contained therein are correct.

The State *v.* Rathbun.

Substantial compliance with proper requests to charge is all that can be required of the trial court.

The accused is not entitled to a charge that evidence of experts as to chemical experiments made by them at the request of the State and not in the presence of a representative of the accused, should be carefully considered, in view of the possibility of their failure to seek for and develop facts favorable to the accused which an impartial and complete investigation would have disclosed, since such a request would involve an insinuation that the experiments were not impartial or complete, and would be equivalent to classing such testimony as tainted in its nature.

The State is under no obligation to prove the existence of a motive for the commission of the crime charged, still less a sufficient or adequate one, although such proof may be of great evidential value in proving the fact of the crime. A request to charge that, " in the absence of direct proof that the accused committed the crime charged, if the State claims that the accused had a motive to commit the crime the evidence must establish beyond a reasonable doubt that the motive was adequate and such as would reasonably be expected to induce the accused to commit a crime of the character of that charged," is therefore rightly refused.

Where a single act of murder is charged in three counts, differing only in the specification of the poison used in its commission, the accused has no right to a separate verdict on each count, and it is within the discretion of the court to order a general verdict.

The separation of a charge into independent fragments, each of which is minutely examined and made the subject of an independent assignment of error, has been so frequently and emphatically disapproved by this court that it should cease.

An erroneous statement of law in the charge, which is plainly inadvertent, will not cause a reversal of the judgment if the preceding and following parts of the charge so clearly and repeatedly state the correct rule that it is impossible to believe that the jury could have been misled by the single erroneous phrase.

Submitted on briefs January 22d—decided March 5th, 1902.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven County and tried to the jury before *Elmer, J. ;* verdict and judgment of guilty of murder in the second degree, and appeal by the accused for alleged errors in the rulings and charge of the court. *No error.*

The case is sufficiently stated in the opinion.

*Levi N. Blydenburgh* and *Sanford B. Martin,* for the appellant (the accused).

*William H. Williams*, State's Attorney, and *Alfred N. Wheeler*, Assistant State's Attorney, for the appellee (the State).

PRENTICE, J. The record discloses twenty-three distinct reasons of appeal. Of these, nineteen are pursued in the defendant's brief. All of these save one relate to the charge. This one complains of the action of the court in denying the request of counsel for the privilege of examining a certain notebook in the hands of a witness for the State. The claim is formulated in the defendant's brief as one to examine memoranda used by a witness while testifying to refresh his recollection, and reference is made to accepted authority that such memoranda must be shown to the adverse party, if he requires it, and that such party may, if he pleases, cross-examine the witness thereon. The finding is, that at the close of the cross-examination of an expert witness for the State, upon the subject of experiments made by him in his examination for barium in the body of the deceased, he referred to a notebook containing memoranda made by him in connection with the experiments. The request of counsel to examine the book was then made and denied, as stated. Of this finding, it is to be observed that it does not appear therefrom that the witness looked at the book while undergoing examination, or to refresh his recollection therefrom while testifying. An examination by a witness of books or papers, made after the conclusion of his testimony, furnishes no ground for a request by adverse counsel to see the books or papers. Such writings do not come within either the letter or the reason of the rule invoked. That seems to have been the situation in the present case. At least the contrary does not appear, as it should to justify the granting of a new trial therefor. New trials are not granted upon speculative constructions of the language of findings. The erroneous action of the court should clearly appear.

Furthermore, the finding discloses that the fact in support of which the witness was testifying, to wit, the presence of barium in the body of the deceased, was one undisputed by

evidence and unquestioned in any way in argument. Clearly, upon all these facts we should not be justified in granting a new trial for this reason assigned. There was apparently no error committed : there was clearly no harm done the accused.

The accused objects because the court failed to give to the jury instructions as contained in ten requests to charge. Many of these requests relate to the general subject of "reasonable doubt" and its application to several incidental aspects of the case. The court gave unexceptionable instructions upon this subject, and such instructions as were necessary for the jury's intelligent guidance. The court did not confine itself to general language, but told the jury that proof of guilt beyond a reasonable doubt was such proof as excluded any reasonable hypothesis of innocence. The necessity of such proof in order to justify a conviction was again and again reiterated. Complaint is not made of what the court said to the jury. The complaint is, rather, that the precise language of certain requests, in which the contention of the accused upon the evidence was emphasized, the law as applicable to certain conditions more or less argumentatively stated in support of his position, and the importance of such proof under such conditions magnified to the prejudice of the State, was not given to the jury. The court in its instructions to the jury should, in its presentation of the case, preserve as far as possible the proper perspective. Certain matters, especially if they are of minor or incidental importance only, should not be unduly magnified, while others of equal or greater importance are minimized or ignored. The case, upon the evidence and the law applicable thereto, should be stated with the purpose of giving the jury as clear and correct a view of its various aspects as possible, and with an effort to preserve the proper balance between the various considerations which may be involved. A picture of a case, like any other picture, is not a true one which is, in portions of it, out of focus, whereby the true relative proportions of what it represents are not depicted. See *State* v. *Rome*, 64 Conn. 329.

Argumentativeness is a recognized fault in instructions. It is never error to refuse to comply with requests embodying this fault. Abbott's Trial Brief, 429.

The accused had no right to have his requests in question complied with. The court performed its full duty when it gave, as it did, such instructions as were correct in law, as were adapted to the issue, and as were sufficient for the guidance of the jury in the case before them. *Hartford* v. *Champion*, 58 Conn. 268, 276; *Charter* v. *Lane*, 62 id. 121.

Exact compliance with requests to charge, furthermore, is not required. Substantial compliance is sufficient. In this case there was substantial compliance. *Hartford* v. *Champion*, 58 Conn. 268, 276; *Livingston's Appeal*, 63 id. 68; *Ridgefield* v. *Fairfield*, 73 id. 47.

Another of the requests not complied with is one framed for the evident purpose of discrediting the evidence of the State concerning the results of certain chemical and medical examinations. The request was to the effect that such evidence, being of examinations made not in the presence of a representative of the accused, should be carefully considered in view of the possibility of a failure to seek for or develop facts and conditions to the advantage of the accused which an impartial and complete investigation would have disclosed. Such instructions, involving an insinuation, if not assumption, that the examinations in question were not impartial or complete, the accused was clearly not entitled to have. The court told the jury to give all the evidence calm and conscientious consideration. There is no rule of law which compelled it to single out this particular evidence of the State for special caution as evidence coming from a tainted source, as in the case of the evidence of an accomplice.

The attempt of counsel, in another of their requests, to use the court to bolster up the testimony of the accused and shield her from the force of a charge of having sought to conceal her crime, by presenting to the jury an argument in her behalf, is too apparent to demand discussion.

The State upon the trial sought to establish a motive on the part of the accused for the commission of the crime

charged. To this end it offered testimony of her confessed adulterous relations with one Hart and similar relations with other men. Two of the accused's requests to charge relate to this subject. In one the court was asked to say to the jury that this evidence should be excluded from consideration unless it was apparent therefrom that a sufficient motive was thereby furnished to induce her to take the life of the deceased, bearing in mind, however, that it is not sufficient to establish a motive, but that it is also necessary that proof beyond a reasonable doubt be given that the motive was carried into effect. The second request is less involved, but to the same general effect. Its purport is that this evidence of adulterous relations should not be considered unless the State had established "such a condition of circumstances as had created in the mind of the accused an adequate and sufficient motive to commit the crime of murder."

Both of these requests involve a misstatement of law. The State was under no obligation to show a motive for the commission by the accused of the crime charged, much less a sufficient or adequate one. While it is a recognized rule of human conduct that crime is the response of the evil mind to some temptation, and that men of sound mind are rarely, if ever, prompted to commit crime without some impelling motive, it does not follow, and it is not the law, that the prosecution, to justify a conviction in a given case, must be so successful in fathoming the mysteries of the human mind and in revealing the possibly hidden secrets influencing it as to develop and disclose to the jury a motive sufficient and adequate for the commission of the offense. Recognizing the fact that crimes are generally committed from some motive, evidence tending to show the existence or nonexistence of such motive is held to be admissible, and often forms an important factor in the inquiry as to the guilt or innocence of an accused. For the purpose of this evidential inquiry the sufficiency of the motive is most pertinent. It is pertinent, however, only in so far as it tends to furnish evidence indicative of guilt or the reverse, to be considered and weighed in connection with the other evidence in the case. The other

evidence may be such as to justify a conviction without any motive being shown. It may be so weak that without a disclosed motive the guilt of the accused would be clouded by a reasonable doubt.

If more need be said upon this subject it will suffice to observe that the court in its charge did adopt one of the accused's requests, and say to the jury that "in the absence of direct proof that the accused committed the crime charged, if the State claims that the accused had a motive to commit the crime, to entitle such claim to the serious consideration of the jury the evidence must establish beyond a reasonable doubt that the motive was adequate and such as would be reasonably expected to induce the accused to commit a crime of the character of that charged in the indictment"; and that in another part of the charge the court told the jury that if the State had failed to show the motive it was their duty to acquit. Here was practical compliance with the accused's requests. The statements do not contain correct instructions, but the accused certainly, is without ground for complaint.

The only remaining request which calls for attention is a cleverly framed but vigorous exhortation to the jury, emphasizing the individual duty and responsibility of each member of the panel, the individual character of their decision, the right and duty of each juror to adhere to his opinion when formed, even at the expense of a disagreement and dismissal. The great objection to the request as framed is not so much that it states incorrect principles, as that it magnifies certain considerations and minimizes or ignores others. The duty of jurors to have due regard and deference to the opinions of each other, to listen with candor to each other's arguments, and, if in a small minority against conviction, to consider whether the doubt entertained is a reasonable one, is indeed referred to, but so incidentally, and in such subordination to the emphatic exegesis upon individual duty and responsibility, that the general effect upon the jury of the instructions would scarcely have been in consonance with correct principles. A request to charge, of

such a character, may be disregarded. To entitle a party to instructions from a judge they must be fairly framed to express the law, and reasonably adapted to convey a correct and not a distorted impression. Requests which are plainly devised to any other end impose no duty upon a judge with respect to them.

Turning now to the charge as given, we notice the first ground of error assigned thereto, which is that the court told the jury that they might return a general verdict. The indictment contained three counts, all for murder in the first degree, inflicted by means of poison. In the first count the poison is described as arsenic, in the second as a poison known as "Rough on Rats," and in the third as an unknown poison. In all other respects the counts are uniform.

The offenses charged in the three counts were one, its commission being charged in different ways. The crime charged in each was the same and required the same penalty. The general rule is that in such cases the proper form of verdict is a general one. *State* v. *Rounds*, 76 Me. 123.

This matter was entirely within the discretion of the trial court and cannot be made the subject of review. An accused in such a case has no right to a separate verdict upon each count. *State* v. *Tuller*, 34 Conn. 280, 281.

Even where separate offenses are charged in separate counts the ·accused, by not asking for separate verdicts, waives all right to object to a general verdict, upon appeal or otherwise. *State* v. *Basserman*, 54 Conn. 88. In the present case no such request was made.

The 13th, 14th, 15th and 17th assignments of error are criticisms of single detached sentences of the charge, either for misstatements of fact or of law. We fail to find any statement of fact not supported by the finding, or any statement of law which, read as it should be with its context and in connection with the charge as a whole, is incorrect or misleading. The method of criticism adopted in these reasons of appeal, by which the charge is carefully dissected into independent fragments and each subjected to independent microscopic examination, is one which has been so frequently

and emphatically disapproved by this court, and especially of late, that it ought to cease.    *State* v. *Griswold*, 73 Conn. 95 ; *Benedict* v. *Everard*, ibid. 157 ; *Candee* v. *New York, N. H. & H. R. Co.*, ibid. 667 ; *State* v. *Kallaher*, 70 id. 398; *Collins* v. *Richmond Stove Co.*, 63 id. 356 ; *State* v. *Scheele*, 57. Conn. 307.

The 16th assignment of error is that the court said to the jury that " the adequacy or inadequacy of the motive is not important ; if it exists, that is sufficient." Enough has already been said upon this subject to render further comment unnecessary.

The 18th reason of appeal is based upon an incorrect citation from the charge as made. The record shows that in this portion of the charge the court was simply stating a claim of the State and not making a statement of its own. The correction removes all occasion for complaint.

Passing by the 19th and 20th assignments of error, which are not pressed, we come to the 21st and 22d, which direct attention to two portions of the charge, one immediately following the other, in which the court plainly misstated the law. The accused contended, by way of defense, that some other person committed the offense, or at least that the administration of the poison was by some other person, or the result of an accident. With respect to these claims the court said : " Now, if you are satisfied, gentlemen of the jury, from the evidence and the claims of the defense that somebody else committed this offense, if you are satisfied of that beyond a reasonable doubt, of course the defendant cannot be convicted of the offense. If you are satisfied that she had no opportunity ; that the motive did not exist, after you have sifted all these facts, then, of course, the claim of the defense is a good one." " If you are satisfied that the administration of this arsenic placed in the coffee was by some other person, or the result of an accident, then, of course,. if you are satisfied of that beyond a reasonable doubt, you cannot convict the defendant."

These instructions were incorrect. In *State* v. *Hawley*, 63 Conn. 47, the true rule is found. If these instructions

stood alone, or unqualified, the accused would plainly be entitled to a new trial. Let us, however, examine them in connection with their immediate context, and the charge as a whole. The charge as a whole was exceptionally emphatic in its assertion of the duty of the State to establish all the elements of its case beyond a reasonable doubt. The jury was told that the determination of the issue did not rest upon the weakness of the defense, but upon the strength of the prosecution; that if the claims of the defense were right, if the State had failed to produce the testimony which was necessary to bring the crime home to the accused, acquittal must follow. Thus far the court had plainly told the jury in inevitable effect, especially when the claims of the parties and the general tenor of the charge to this point is considered, that if the State had failed to adduce proof beyond a reasonable doubt of all the facts necessary to bring the crime home to the accused, there must be an acquittal. Among these necessary facts was the one which stood out most prominently of them all, to wit, the administration of the poison by her. The court having thus instructed the jury, next took up the claims of the defense now under consideration, and having stated them, used the language justly criticised. No sooner was this language concluded than the court returned to the burden of its former statements. The next sentence was: " But as I said before to you, you must rely upon the strength of the State's case. Before you can come to any conclusion you must be satisfied beyond a reasonable doubt from all these facts that she administered the poison wilfully and premeditatedly to take the life of somebody; . . . and you have got to be satisfied beyond a reasonable doubt. If you are not, then your verdict must be a verdict of acquittal." Then came the final words of dismission to the jury-room. Sent thus with the practically closing injunction of the court in their ears, that they must acquit unless they were satisfied beyond a reasonable doubt that the accused administered the death-producing drug, and with the former directions of the court and the general tenor of them in mind, it is simply impossible to be-

lieve that the jury could have been mislead by the inadvertent erroneous statements quoted, into a mistaken conception of the law as to the burden imposed upon the State to sufficiently establish guilt to justify conviction.

There is no error.

In this opinion the other judges concurred.