HARRY ROSENSTEIN vs. THE FAIR HAVEN AND WESTVILLE RAILROAD COMPANY.

HARRY ROSENSTEIN ET AL. (THE STARR BOTTLING WORKS) vs. THE FAIR HAVEN AND WESTVILLE RAILROAD COMPANY.

Third Judicial District, Bridgeport, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In charging the jury the trial judge should state the issues involved, together with such principles of law as may be necessary for their proper determination upon the facts as they may be found to exist; and this statement should be made in as simple, orderly, clear and precise a manner as it reasonably can be under the circumstances.

A charge which is made up of a multitude of disjointed requests prepared by counsel, presenting extreme and partial statements, argumentative in character and unmindful throughout of the true perspective of the case, is objectionable as tending to confuse rather than to enlighten the jury, even if the legal propositions contained in the requests are free from error.

Such a method is apt to lead, as it did in the present case, to erroneous and contradictory instructions.

The plaintiff, whose horse received an electric shock upon stepping into a pool of water on the highway occupied in part by the defendant's railway, testified as to what, in his opinion, his horse was worth before and after the accident. *Held* that to test the value of this opinion he might be asked on cross-examination what he paid for the horse.

While the cost of property ordinarily affords some evidence of its value, it is not true that it is so indicative of value at all times however far removed, or under circumstances however changed, that it deserves to be received in proof of such value. Hence it is that in the admission or rejection of such testimony much must be left to the sound, but not unlimited or unreviewable, discretion of the trial court, in view of the circumstances of each case.

Argued April 11th—decided June 9th, 1905.

ACTIONS to recover damages for injuries caused by the alleged negligence of the defendant in allowing electricity to escape from its trolley wires into the highway, brought to the City Court of New Haven and tried together to the jury before *Dow, J.;* verdict and judgment for the plaintiff in each case, and appeal by the defendant. *Error and new trial granted.*

*Harry G. Day* and *Henry H. Townshend*, for the appellant (defendant).

*Maxwell Slade* and *David H. Slade*, for the appellees (plaintiffs).

PRENTICE, J. These two cases arose out of the same occurrence and were tried together. The plaintiffs claimed to have proven that the plaintiff in the first case, a member of the copartnership plaintiff in the second, was driving with a horse, wagon and harness belonging to said copartnership, through one of the streets of New Haven through which the defendant operates a double-track, overhead electric trolley line, when, approaching the curb, the horse stepped into a pool of water and thereby became shocked with electricity which was escaping from the defendant's wires and iron poles used in transmitting the electric current employed by it in the operation of its cars, leaped into the air and fell to the ground, thereby injuring the horse, wagon and harness, and throwing said plaintiff out upon the ground, severely injuring him. They claimed also to have proved that said escape of electricity was due to the defend-

ant's failure to perform its duty under the circumstances. The allegations of the complaint charging negligence on the part of the defendant and averring the absence of contributory negligence on the part of the plaintiff were denied, and the defendant claimed to have proved that it did its full duty in the premises, and that the accident was due to no failure on its part to exercise the high degree of care required of it under the circumstances.

All the assignments of error, save only a single one in the latter case, relate to the charge. Specific errors in the instructions given are pointed out, but the complaint which is the dominating one and which gathers around it most, if not all, of the others, is one that the charge, taken as a whole, was so indefinite and uncertain in its terms, so contradictory in its parts, and so inadequate in its scope and tenor, that it furnished no proper guidance for the jury.

It was incumbent upon the court to state to the jury the issues which were presented for its determination upon the evidence, and such principles of law as might be necessary for their proper determination upon the facts as they should be found to exist. This statement it was the duty of the court to make in as simple, orderly, clear and precise a manner as it reasonably could under the circumstances.

In the performance of its duty in the present cases, the court confined its own personal instructions to a few general observations at the beginning of the charge. These contained only a few sentences devoted to an explanation of the issues, or the law pertinent to their decision. The balance of the charge was confined entirely to a reading of the numerous requests filed by counsel and the commendation of all, save two of those presented by the defendant, as embodying a correct statement of the law, and an elaboration of a third by adding a quotation from an opinion of this court. These instructions fill five pages of the printed record. The not unnatural result of this objectionable method was, that a mass of unarranged and disjointed matter prepared by counsel in a partisan spirit and for a partisan purpose, extreme and partial in many of its statements, fre-

quently argumentative in its character and unmindful throughout of the true perspective of the case, was given to the jury, more, perhaps, to its confusion than its enlightenment. Had the subject-matter of these requests been unexceptionable in law, the purpose of a charge could scarcely have been well accomplished by the method employed. *State* v. *Rathbun*, 74 Conn. 524; *Aikin* v. *Weckerly*, 19 Mich. 482. In the present instance the normal dangers incident to the instruction of juries in the manner indicated were aggravated by the fact that the court was thus led into giving instruction upon vital matters in erroneous and contradictory ways, thus adding error and inconsistency to the list of the faults of the charge.

An instance or two will illustrate the situation. The extent of the defendant's duty in the premises was of course a vital feature of the case, and it was all important that instruction should be given which clearly and intelligently declared the law. The court read to the jury the defendant's fourth request, to the effect that there was no contractual relation between the plaintiffs and the defendant, and that the latter was not an insurer of the plaintiff's safety from injury by the escape of electricity from its wires, and refused to so charge. This express disapproval of a sound proposition was accompanied by instructions contained in the plaintiffs' requests, which in effect made the defendant an insurer. Through the medium of other requests the true rule of duty as defined by this court in *McAdam* v. *Central Ry. & Elec. Co.*, 67 Conn. 445, was stated. Elsewhere in the plaintiffs' requests other measures of the defendant's duty were given. Attempts to deal with this subject constantly recur, especially in the plaintiffs' requests, and it is always dealt with in a different way. These attempts are usually incidental to an effort to have the plaintiffs' right to a judgment argumentatively enforced. The result, however, was that varying and wholly contradictory standards of duty were given to the jury for their use in determining the question of the defendant's discharge or nondischarge of its duty to the plaintiff, and they were left to reach their conclusion upon

Rosenstein *v.* Fair Haven & W. R. Co.

the issue as to the defendant's negligence without proper guidance.

Again, upon the subject of the plaintiffs' contributory negligence, the jury were once in effect told that the pleadings did not raise that issue. Elsewhere, pursuant to one of the defendant's requests, they were correctly told otherwise.

It is attempted to justify the instructions notwithstanding these inconsistencies, upon the ground that the charge should be judged as a whole, and that when so judged it would appear that a substantially correct and proper charge was given and the jury correctly guided. Notwithstanding the correct proposition of law upon which this contention is based, it has already been made sufficiently apparent that its subordinate proposition of fact is one so wholly without support that further discussion is unnecessary. *State* v. *Scheele*, 57 Conn. 307 ; *Lutton* v. *Vernon*, 62 id. 1 ; *Smith* v. *King*, ibid. 515 ; *State* v. *Kallaher*, 70 id. 398 ; *State* v. *Rathbun*, 74 id. 524.

One of the plaintiffs in the second action testified as a witness in chief, that the horse was bought about two years before the accident, that he was about seven years old and had at all times been sound and well and capable of doing full work. He was then asked, as bearing upon the amount of damages recoverable, what in his opinion the horse was worth both before and after the accident. He replied from $200 to $225 before the accident and only $50 thereafter. Upon cross-examination he was asked what he paid for the horse. Upon objection the inquiry was not permitted. The cross-examiner was thus improperly deprived of his right to thus test the opinion of the witness as to value, and, if possible, demonstrate his error. Wigm. on Ev., §§ 464, 1006 (Vol. 1, 2).

Later the defendant offered the testimony of the vendor of the horse as to the purchase price, and that was excluded. This ruling stands upon a different basis from that just considered. It is doubtless true, as is frequently said, that the cost of property is ordinarily some evidence of its value.

*Hawver* v. *Bell*, 141 N. Y. 140 ; *Kendrick* v. *Beard*, 90 Mich. 589. It is not true, however, that cost is so indicative of value at times however far removed or under circumstances however changed, that it deserves to be received in proof of such value. *Miner* v. *Connecticut River R. Co.*, 153 Mass. 398 ; *Alling* v. *Weissman*, 77 Conn. 394. The conditions of the sale, moreover, may make the consideration for which the title passed of no true significance. *Sanford* v. *Peck*, 63 Conn. 486. Not all logically probative matter is entitled to be admitted in evidence. Such matter may for one reason or another be of so slight significance, or have so remote a connection with the fact sought to be established, as to make it unworthy to be permitted to encumber or complicate the trial. Thayer's Preliminary Treatise on Evidence, pp. 266, 516, 517 ; *State* v. *Kelly*, 77 Conn. 266. So it is that trial courts are permitted to exercise a considerable measure of discretion in determining whether a given piece of testimony which may be logically probative of a fact in issue, ought, in view of the considerations suggested and others recognized by the authorities, to be received. Thayer's Treatise, *supra.* And so it is that the admission or rejection of evidence like that here presented is not to be determined by an arbitrary rule, but by considerations which ought to influence the exercise by the court of a sound, but not unlimited or unreviewable, discretion, in view of all the circumstances of each case. It is unnecessary to pursue this subject further, to inquire whether there was in this case any exercise or abuse of this discretion, since upon the new trial which must be granted it is to be assumed that in view of these observations a proper course will be taken.

There is error and a new trial is granted.

In this opinion the other judges concurred.